IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STATE OF HAWAII, ex rel.<br>DAVID M. LOUIE, ATTORNEY<br>GENERAL,<br><br>Plaintiff,<br><br>vs.<br><br>JP MORGAN CHASE & CO., CHASE<br>BANK USA, N.A., and DOE<br>DEFENDANTS 1-20,,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 12-00263 LEK-KSC |
| STATE OF HAWAII, ex rel.<br>DAVID M. LOUIE, ATTORNEY<br>GENERAL,<br><br>Plaintiff,<br><br>vs.<br><br>HSBC BANK NEVADA, N.A., HSBC<br>CARD SERVICES, INC., and DOE<br>DEFENDANTS 1-20,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 12-00266 LEK-KSC |
| STATE OF HAWAII, ex rel.<br>DAVID M. LOUIE, ATTORNEY<br>GENERAL,<br><br>Plaintiff,<br><br>vs.<br><br>CAPITAL ONE BANK (USA), N.A.<br>CAPITAL ONE SERVICES, LLC,<br>and DOE DEFENDANTS 1-20,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 12-00268 LEK-KSC |
| STATE OF HAWAII, ex rel.<br>DAVID M. LOUIE, ATTORNEY<br>GENERAL, | )<br>)<br>)<br>) | CIVIL NO. 12-00269 LEK-KSC |

```
                Plaintiff,      )
                                )
        vs.                     )
                                )
DISCOVERY FINANCIAL SERVICES,   )
INC., DISCOVER BANK, DFS        )
SERVICES, L.L.C., ASSURANT,     )
INC., and DOE DEFENDANTS 1-     )
20,                             )
                                )
                Defendants.     )
_____  )
STATE OF HAWAII, ex rel.        )        CIVIL NO. 12-00270 LEK-KSC
DAVID M. LOUIE, ATTORNEY        )
GENERAL,                        )
                                )
                Plaintiff,      )
                                )
        vs.                     )
                                )
BANK OF AMERICA CORPORATION,    )
FIA CARD SERVICES, N.A., and    )
DOE DEFENDANTS 1-20,            )
                                )
                Defendants.     )
_____  )
STATE OF HAWAII, ex rel.        )        CIVIL NO. 12-00271 LEK-KSC
DAVID M. LOUIE, ATTORNEY        )
GENERAL,                        )
                                )
                Plaintiff,      )
                                )
        vs.                     )
                                )
CITIGROUP INC., CITIBANK,       )
N.A., DEPARTMENT STORES         )
NATIONAL BANK, and DOE          )
DEFENDANTS 1-20,                )
                                )
                Defendants.     )
_____  )
```

**ORDER DENYING PLAINTIFF'S MOTION
TO REMAND AND FOR COSTS AND FEES**

Plaintiff the State of Hawaii, ex rel. David M. Louie,

Attorney General ("the Attorney General") seeks to remand his

lawsuits against several financial entities on the basis that, in each case, there was no federal jurisdiction for the removal of his litigation from state court.  This Court concludes, as set forth more fully below, that removal was proper based on the complete preemption doctrine.  In particular, this Court finds that the payment protection plans and other ancillary products at issue in these lawsuits are debt cancellation contracts and/or debt suspension agreements, and that the fees assessed for these products are interest for purposes of the National Bank Act. Thus, the Court concludes that the claims the Attorney General asserted under state law are preempted, and there is federal question jurisdiction.

On June 15, 2012, the Attorney General filed a Motion to Remand and for Costs and Fees in each of the following cases: State of Hawaii, ex rel. Louie v. JP Morgan Chase & Co., et al., CV 12-00263 LEK-KSC ("CV 12-00263"); State of Hawaii, ex rel. Louie v. HSBC Bank Nevada, N.A., et al., CV 12-00266 LEK-KSC ("CV 12-00266"); State of Hawaii, ex rel. Louie v. Capital One Bank (USA) N.A., et al., CV 12-00268 LEK-KSC ("CV 12-00268"); State of Hawaii, ex rel. Louie v. Discover Financial Services, Inc., et al., CV 12-00269 LEK-KSC ("CV 12-00269"); State of Hawaii, ex rel. Louie v. Bank of America Corp., et al., CV 12-00270 LEK-KSC ("CV 12-00270"); State of Hawaii, ex rel. Louie v. CitiGroup Inc., et al., CV 12-00271 LEK-KSC ("CV 12-00271").

On October 29, 2012, CV 12-00263 Defendants JP Morgan
Chase & Co. and Chase Bank USA, N.A. (collectively "Chase
Defendants") filed a Memorandum in Opposition on their behalf and
on behalf of: the CV 12-00266 Defendants HSBC Bank Nevada, N.A.,
and HSBC Card Services, Inc. (collectively "HSBC Defendants");
the CV 12-00268 Defendants Capital One Bank (USA) N.A., and
Capital One Services, LLC (collectively "Capital One
Defendants"); Defendants Discover Financial Services, Inc.,
Discover Bank, DFS Services, LLC (collectively "Discover
Defendants") in CV 12-00269;[1] the CV 12-00270 Defendants Bank of
America Corporation and FIA Card Services, N.A. (collectively
"BoA Defendants"); and the CV 12-00271 Defendants CitiGroup Inc.,
Citibank, N.A., and Department Stores National Bank (collectively
"Citi Defendants").  [Dkt. no. 75.]  The Attorney General filed
his Reply to the Memorandum in Opposition on November 5, 2012.
[Dkt. no. 78.]  On November 15, 2012, Defendants filed their Sur-
reply pursuant to leave of this Court.  [Dkt. no. 85.]

These matters came on for hearing on November 19, 2012.
Appearing on behalf of the Attorney General were L. Richard

---

[1] Assurant, Inc. was also named as a defendant in the
original complaint filed in what became CV 12-00269.  Prior to
removal, the parties stipulated to substitute Defendant American
Bankers Management Company, Inc. ("American Bankers") for
Defendant Assurant, Inc.  [CV 12-00269, Notice of Removal, Decl.
of John P. Manaut, Exh. 6.]  On October 30, 2012, American
Bankers filed a joinder in the Memorandum in Opposition.  [Dkt.
no. 76.]

Fried, Jr., Esq., Patrick McTernan, Esq., S. Ann Saucer, Esq.,
Laura Baughman, Esq., and Stephen Levins, Esq.  Appearing on
behalf of the Chase Defendants was Thomas Benedict, Esq.
Appearing on behalf of the HSBC Defendants were Michael Bird,
Esq., and Jason Woo, Esq.  Appearing on behalf of the Capital One
Defendants were Margery Bronster, Esq., Andrew Pepper, Esq.,
Sunny Lee, Esq., and James McCabe, Esq.  Appearing on behalf of
the Discover Defendants were William Harstad, Esq., Jason Sung-
Hyuk Yoo, Esq., Michael Bird, Esq., and Kunio Kuwabe, Esq.[2]
Appearing on behalf of the BoA Defendants were Patricia McHenry,
Esq., and Patrick Thompson, Esq.  Appearing on behalf of the Citi
Defendants were Michael Purpura, Esq., Michael Scanlon, Esq.,
Mitch Weber, Esq., and Robert Trenchard, Esq.

After careful consideration of the Motion, supporting
and opposing memoranda, and the arguments of counsel, the
Attorney General's motions for remand are HEREBY DENIED for the
reasons set forth below.

**BACKGROUND**

I.   **Initial Filings**

On April 12, 2012, the Attorney General filed his
Complaint in each of these actions in the Circuit Court of the
First Circuit, State of Hawai`i ("State Court").  The six
Complaints are substantively identical.  They allege that

---

[2] Kunio Kuwabe also appeared on behalf of American Bankers.

Defendants have engaged in deceptive and predatory practices in marketing and selling ancillary credit card products to Hawai`i residents.  Examples of such products include: payment protection plans, identity theft protection plans, and extended warranties. In particular, the Attorney General contends that Defendants have targeted particularly vulnerable consumers, including the elderly and persons with credit problems.

The Complaints allege the following claims: unfair or deceptive acts or practices ("UDAPs"), in violation of Haw. Rev. Stat. §§ 480-1 *et seq.* ("Count I"); violation of the UDAP laws, Haw. Rev. Stat. § 480-13.5, specifically addressing consumer fraud against elders ("Count II"); and unjust enrichment ("Count III").  The Complaints seek the following relief: an order enjoining Defendants from engaging in UDAPs; a judgment for restitution and disgorgement of monies for all Hawai`i consumers injured by Defendants' acts as alleged in the Complaints; a declaratory judgment that Defendants violated Hawai`i law; civil penalties; attorneys' fees and costs; pre-judgment and post-judgment interest; and any other appropriate relief.

On May 17, 2012, the Chase Defendants removed CV 12-00263 to this district court.  The Chase Defendants assert federal jurisdiction based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and jurisdiction pursuant to 28 U.S.C. § 1331 based on the complete preemption doctrine.  They

also assert that there is supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any claims that are not independently removable. [CV 12-00263, Notice of Removal at ¶ 13.]

On May 18, 2012, the HSBC Defendants removed CV 12-00266, the Capital One Defendants removed CV 12-00268, the Discover Defendants removed CV 12-00269, and the BoA Defendants removed CV 12-00270 based on the same grounds that the Chase Defendants relied upon. [CV 12-00266, Notice of Removal at ¶ 8; CV 12-00268, Notice of Removal at ¶ 15; CV 12-00269, Notice of Removal at ¶ 10; CV 12-0027066, Notice of Removal at ¶ 13.] Also on May 18, 2012, the Citi Defendants removed CV 12-00271 based on the CAFA argument and the complete preemption argument that the other Defendants relied upon, as well as the additional argument that there is jurisdiction under 28 U.S.C. § 1331 because the case raises a "substantial federal question". [CV 12-00271, Notice of Removal at ¶ 15 (quotation marks omitted).] The Citi Defendants argue that, even if a federal question does not appear on the face of the well-pleaded complaint, the Attorney General's state law claims necessarily raise a federal issue. [<u>Id.</u> at ¶ 36 (quoting <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 314 (2005)).]

## II.  **The Instant Motions**

Insofar as all of the Notices of Removal address the same two primary bases of removal – the CAFA argument and the

complete preemption argument – the Attorney General submitted an omnibus memorandum in support of all six motions to remand.  The memorandum in support of the motion for CV 12-00271 also contains a discussion of the Citi Defendants' Grable argument.  The Court will therefore discuss the Attorney General's Motion to Remand and for Costs and Fees for CV 12-00263 ("Omnibus Motion") for the CAFA argument and the complete preemption argument, and the Court will discuss the Attorney General's Motion to Remand and for Costs and Fees for CV 12-00271 ("Grable Motion") for the Grable argument.  The Court refers to all of the defendants in the six actions collectively as "Defendants".

A.  **Omnibus Motion**

At the outset, the Attorney General emphasizes that the Complaints only assert state law claims and "expressly disclaim[] both the class action form and federal question jurisdiction.[3]"

_____

[3] In CV 12-00263, the Attorney General states that he is bringing the action under § 480-2(d), Haw. Rev. Stat. § 661-10, and under his _parens patriae_ authority "on behalf of the State and its citizens to enforce Hawaii law."  [CV 12-00263, Complaint at ¶ 8.]  The Attorney General also stated:

The State asserts no claims arising out of, under or in any way preempted by the laws (common, statutory or administrative) of the United States, nor does it bring this action on behalf of a class or any group of persons that can be construed as a class.  The State specifically disclaims any such claims that would support removal of this action to a United States District Court on the basis of diversity, jurisdictional mandates under the Class Action Fairness Act of 2005 (28 U.S.C. §§ 1332(d),

(continued...)

8

[Mem. in Supp. of Omnibus Motion at 2 (citation omitted).]

The Attorney General argues that the principles behind the general removal standard, which favors remand, "are heightened where, as here, the actions are brought by a state. In such cases, 'considerations of comity make [courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it.'" [Id. at 3 (alteration in Mem. in Supp. of Omnibus Motion) (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 21 n.22 (1983)).] The Attorney General points out that the Ninth Circuit has relied on Franchise Tax Board in reversing the denial of the Nevada attorney general's motion to remand a case brought against various banking defendants for violations of state consumer protection laws because no clear rule demanded removal and removal did not serve an overriding federal interest. [Id. at 3-4 (discussing Nevada v. Bank of Am. Corp., 672 F.3d 661, 676 (9th Cir. 2012)).] The Attorney General urges this Court to rely on similar grounds and to grant the Omnibus Motion. [Id. at 4.]

1. **CAFA**

The Attorney General argues that CAFA does not demand removal. He emphasizes that the Ninth Circuit has held that:

---

³(...continued)
1453, 1711-1715), federal question jurisdiction, or any other basis.

[Id. at ¶ 9.]

"'Under the plain text of 28 U.S.C. § 1332(d), the *parens patriae* suits are not class actions within the meaning of CAFA.'" [<u>Id.</u> at 5 (quoting <u>Washington v. Chimei Innolux Corp.</u>, 659 F.3d 842, 850 (9th Cir. 2011)).] The Attorney General also emphasizes that CAFA defines "class action" as a civil action that is filed pursuant to Fed. R. Civ. P. 23, or a similar state statute or rule, by one or more representative persons. In the instant cases, the Attorney General did not file the actions pursuant to a class action rule, and he did not bring the actions in a representative capacity. [<u>Id.</u> at 5-6 (quoting 28 U.S.C. § 1332(d)(1)(B)).] The Attorney General notes that the Ninth Circuit's CAFA holding in <u>Chimei</u>, which it re-affirmed in <u>Bank of America</u>, is consistent with the majority of federal decisions on the issue. [<u>Id.</u> at 6-7 (citing cases).]

The Attorney General argues that the instant case is indistinguishable from <u>Chimei</u>. As in the instant case, the Washington attorney general sought restitution on behalf of Washington consumers, and the California attorney general sought restitution for California residents, who purchased the defendants' products. The Attorney General asserts that he has brought the same type of *parens patriae* action that the California and Washington attorneys general brought in <u>Chimei</u> and which the Ninth Circuit held was distinguishable from a true class action. [<u>Id.</u> at 7-8 (discussing <u>Chimei</u>, 659 F.3d at 846,

10

848).]  Further, <u>Bank of America</u> reinforced <u>Chimei</u> and also approved of the analysis in a Seventh Circuit case holding that a *parens patriae* suit is not a class action because it is not brought by a representative of a class.  Both <u>Bank of America</u> and <u>LG Display Co. v. Madigan</u>, 665 F.3d 768 (7th Cir. 2011), held that determining whether a *parens patriae* suit is a class action requires looking at the Complaint as a whole to determine whether the states or the individual consumers are the real parties in interest.  Both the Ninth Circuit and the Seventh Circuit rejected a claim-by-claim analysis.  [<u>Id.</u> at 8 (citing <u>Bank of Am.</u>, 672 F.3d at 667, 669; <u>Madigan</u>, 665 F.3d 772, 774).]  Thus, the Attorney General argues that, in the instant cases, Defendants cannot focus solely on the restitution claims as the basis for federal CAFA jurisdiction.  [<u>Id.</u> at 8-9.]

    Defendants have also argued that the Attorney General's choice of counsel supports Defendants' position that the instant cases are class actions.  [CV 12-00263, Complaint at ¶ 20.]  The Attorney General asserts that there is no legal authority supporting the position that the identity of a plaintiff's counsel can make a particular case a class action.  [Mem. in Supp. of Omnibus Motion at 9-10.]

    The Attorney General emphasizes that he has not brought these actions pursuant to Haw. Rev. Stat. § 480-14(b) or Haw. R. Civ. P. 23, and he denies Defendants' position that he brought

the actions pursuant to Haw. Rev. Stat. §§ 480-3.1, 480-13.5, and 480-15.  He emphasizes that, although § 480-14(b) **allows** the attorney general to bring a class-action-type case alleging UDAP claims, the statute does not **require** a UDAP case to brought in that form.[4]  The Attorney General also argues that *parens patriae* claims for disgorgement and restitution are distinguishable from private parties' claims for damages.  He contends that the Complaints in the instant case are indistinguishable from the complaints in Chimei and Bank of America.  [Id. at 11-14.]

The Attorney General also argues that Haw. Rev. Stat. § 480-22(c) indicates that the legislature clearly contemplated that the attorney general could bring a UDAP action without

---

[4] Section 480-14(b) states:

> The attorney general of the State **shall** be authorized to bring a class action for indirect purchasers asserting claims under this chapter. The attorney general or the director of the office of consumer protection **may** bring a class action on behalf of consumers based on unfair or deceptive acts or practices declared unlawful by section 480-2.  Actions brought under this subsection **shall** be brought as parens patriae on behalf of natural persons residing in the State to secure threefold damages for injuries sustained by the natural persons to their property by reason of any violation of this chapter.

(Emphases added.)  The Attorney General argues that the Hawai`i Legislature intentionally used the word "may" to allow the **option** to bring class-action-type cases, but a class-action-type case is not the only way to litigate UDAPs.  [Mem. in Supp. of Omnibus Motion at 15-17.]

invoking § 480-14(b).  [Id. at 17-18 & n.16.]  Further, even

assuming, *arguendo*, that the Attorney General brought the instant

Complaints as a "class action" pursuant to § 480-14(b), he would

not be advancing the case as a representative class member, as

required by CAFA, and the action would not meet all of the

requirements of a CAFA class action.  As the Ninth Circuit noted

in Chimei, where a state procedural device has some elements of a

class action (notice to affected persons, opt-out provision,

court approval of settlements), but not the adequacy or

typicality elements, there is no CAFA jurisdiction.  [Id. at 18-

20 (discussing Chimei, 659 F.3d at 850).]

The Attorney General also argues that Defendants'

argument that the instant action constitutes a "mass action"

pursuant to CAFA is contrary to the plain language of CAFA and

controlling Ninth Circuit case law.  The Attorney General argues

that the Ninth Circuit held in Bank of America that a state

attorney general's *parens patriae* action pursuant to state

consumer protection laws is not a "mass action".  [Id. at 20.]

## 2.  **Complete Preemption**

The Attorney General emphasizes that, pursuant to the

well-pleaded complaint rule, he is the master of his claim and he

may avoid federal jurisdiction by relying exclusively on state

law.  He also emphasizes that complete preemption is the

exception rather than the rule, and the doctrine is reserved only

for rare and extraordinary departures from the well-pleaded complaint rule.  The Attorney General argues that the Court should not apply the complete preemption doctrine to Defendants' argument that the Complaints assert claims for usury, which are preempted pursuant to Beneficial National Bank v. Anderson, 539 U.S. 1 (2003), because Defendants rely on an overly expansive interpretation of Beneficial National.  The Attorney General argues that the recognition in Beneficial National that 12 U.S.C. §§ 85, 86 completely preempts usury cases against national banks is inapplicable in the instant cases, which do not allege usury claims.  [Id. at 23-25.]

The Attorney General argues that charges for Defendants' ancillary products, such as payment protection plans, are not interest as defined in § 85 because the charges do not compensate the banks for making loans.  Further, even if the charges constitute interest, the Complaints do not challenge the rate of interest.  [Id. at 25-26.]

The Attorney General notes that this Court need not decide whether the charges for payment protection plans constitute interest because, even if they are interest, complete preemption does not apply because the Attorney General is not challenging the rate of interest, and § 86 does not provide a remedy for the violations alleged in these cases.  The Attorney General notes that the district court in West Virginia ex rel.

14

McGraw v. JPMorgan Chase & Co., 842 F. Supp. 2d 984 (S.D.W. Va. 2012), rejected arguments identical to the ones Defendants raise here.  The Attorney General emphasizes that none of the Complaints in the instant cases contains an allegation that an interest rate is excessive.  [Id. at 30-32.]  The Attorney General asserts that a long line of cases has held that non-usury consumer protection cases are not subject to preemption under the National Bank Act.  [Id. at 33-35 (citing cases).]

In addition, the Attorney General notes that Discover Bank, one of the defendants in CV 12-00269, is a state-chartered bank.  Discover Bank asserts federal jurisdiction pursuant to 12 U.S.C. § 1831d(a), but the Discover Defendants have not identified a state-law maximum interest rate which the Attorney General alleges Discover Bank has exceeded.  [Id. at 35-36.]

Thus, the Attorney General urges this Court to remand these cases to the State Court, and the Attorney General seeks removal related expenses, including attorneys' fees, because the Attorney General contends that Defendants lacked an objectively reasonable basis for removal.  [Id. at 37.]

B.    **Grable Motion**

According to the Attorney General, the Citi Defendants argue that Grable overruled the well-pleaded complaint rule as set forth in Louisville & Nashville Railroad Co. v. Mottley, 211 U.S. 149 (1908), and its progeny.  [Mem. in Supp. of Grable

Motion at 38 (citing CV 12-00271 Notice of Removal at ¶ 36).]
The Attorney General argues that <u>Grable</u> does not mention such a
drastic shift in federal question jurisprudence, and the United
States Supreme Court has expressly narrowed the scope of <u>Grable</u>
to "a 'special and small category[.]'" [<u>Id.</u> at 39 (alteration in
Mem. in Supp. of <u>Grable</u> Motion) (quoting <u>Empire HealthChoice</u>
<u>Assur., Inc. v. McVeigh</u>, 547 U.S. 677, 699 (2006)).]  Further,
the Ninth Circuit has expressly rejected this interpretation of
<u>Grable</u>. [<u>Id.</u> at 39-40 (quoting <u>Cal. Shock Trauma Air Rescue v.</u>
<u>State Comp. Ins. Fund</u>, 636 F.3d 538, 542 (9th Cir. 2011)).]

        The Attorney General emphasizes that the CV 12-00271
Complaint does not assert any federal claims and specifically
disclaims any cause of action that would support federal
jurisdiction.  [<u>Id.</u> at 40 (citing CV 12-00271, Complaint at
¶ 9).]  The Citi Defendants' Notice of Removal argues that the CV
12-00271 Complaint suggests that the Citi Defendants violated a
federal regulation, which the Attorney General argues the Citi
Defendants will rely upon to assert a non-complete preemption
defense.  [<u>Id.</u> at 40-41 (citing CV 12-00271, Notice of Removal at
¶¶ 39-40).]  The Attorney General, however, argues that, even if
the Citi Defendants violated federal regulations, that does not
mean that federal law creates the cause of action the Attorney
General asserts.  Further, the mere fact that the Citi Defendants
intend to raise a non-complete preemption defense based on

federal regulations does not create removal jurisdiction.  The Citi Defendants' Notice of Removal relies upon Sparta Surgical Corp. v. NASD, 159 F.3d 1209 (9th Cir. 1998), but the Attorney General argues that Sparta is inapplicable because, in that case, there was exclusive federal jurisdiction pursuant to 15 U.S.C. § 78aa, not 28 U.S.C. § 1331.  [Id. at 41-44.]

The Attorney General emphasizes that the Citi Defendants are the only ones to make the Grable argument, which contradicts well-established Supreme Court precedent.  Thus, the Attorney General asserts that an award of removal related expenses is particularly appropriate against the Citi Defendants. [Id. at 44-45.]

III. **Joint Memorandum in Opposition**

In Defendants' joint Memorandum in Opposition, Defendants state that the payment protection plans at issue in these cases "are actually contractual modifications of credit card loan agreements."  [Mem. in Opp. at 4-5 & n.2 (citing Fink Decl. ¶ 4; Jantzi Decl. ¶ 4; Choltus Decl. ¶ 7)[5].]  Defendants

---

[5] The "Fink Declaration" is the Declaration of Marc Fink, attached to the Memorandum in Opposition, Declaration of Counsel, as Exhibit 1.  [Dkt. no. 75-2.]  Mr. Fink is a Marketing Director for Chase Bank USA, N.A.  [Id. at ¶ 1.]  The Fink Declaration was originally filed as an exhibit to the Notice of Removal in CV 12-00263.
The "Jantzi Declaration" is the Declaration of Mona Jantzi, attached to the Memorandum in Opposition, Declaration of Counsel, as Exhibit 2.  [Dkt. no. 75-3.]  Ms. Fink is a Vice President, Card Customer Management for Capital One Bank (USA) N.A.  [Id. at (continued...)

assert that the payment protection plans are "loan modification agreements" considered "debt cancellation contracts" or "debt suspension agreements." [Id. at 5 (citing 12 C.F.R. § 37.1(a)).] According to Defendants:

> Payment protection plans extend additional credit to credit card holders by relieving or suspending their obligation to repay their credit card debt under certain circumstances. For example, if a cardholder is hospitalized, loses a job, or becomes disabled, a payment protection plan typically will cancel or suspend the cardholder's payment obligations on an interest-free basis. In exchange for these favorable credit terms, cardholders pay a monthly fee calculated as a percentage of their credit card loan balance, e.g., 0.89 percent of their monthly balance.

[Id. (footnotes omitted) (citing Fink Decl. ¶¶ 5-6; Jantzi Decl. ¶¶ 4-5; Choltus Decl. ¶¶ 7-8).] Defendants emphasize that the Office of the Comptroller of the Currency's ("OCC") regulations, 12 C.F.R. Part 37, authorize national banks to offer payment protection plans, and such plans are governed by federal law and regulations, not by state law. [Id. at 5-6 (citing 12 C.F.R. § 37.1(c)).] Discover Bank is chartered in Delaware, and Del.

---

⁵(...continued)
¶ 1.] The Jantzi Declaration was originally filed as an exhibit to the Notice of Removal in CV 12-00268.
     The "Choltus Declaration" is the Declaration of Eric Choltus, attached to the Memorandum in Opposition, Declaration of Counsel, as Exhibit 3. [Dkt. no. 75-4.] Mr. Choltus is a Senior Vice President, Business Production Management Executive at Bank of America Corporation. [Id. at ¶ 1.] The Choltus Declaration was originally filed as an exhibit to the Notice of Removal in CV 12-00270.

Admin. Code § 713-3.1.1 authorizes it to offer payment protection plans under Delaware law.  [Id. at 5-6 n.5.]

Defendants urge this Court to carefully scrutinize the Complaints to determine whether it should re-characterize the Complaints to reflect the fact that they actually assert removable claims.  [Id. at 7.]

### A. CAFA

Defendants argue that these cases were properly removed pursuant to CAFA because the Attorney General filed them under a state statute that is similar to Fed. R. Civ. P. 23 and authorizes the suit as a class action.  [Id. at 8 (citing 28 U.S.C. § 1332(d)(1)(B); Washington v. Chimei Innolux Corp., 659 F.3d 842, 848 (9th Cir. 2011)).]  Defendants argue that § 480-14(b) is the only provision which authorizes the Attorney General to recover monetary relief on behalf of consumers for UDAPs, and it requires the Attorney General to do so through a parens patriae class action pursuant to Haw. R. Civ. P. 23.  Defendants assert that this precludes the Attorney General from obtaining such monetary relief through any other means.  [Id. at 8-11.]

Defendants also argue that legislative history indicates that the Hawai`i Legislature intended § 480-14(b) to be the sole method for the Attorney General to obtain monetary relief on behalf of consumers for UDAPs.  [Id. at 11-12 (citing 1987 Haw. Sess. Laws Act 274, §§ 1, 5.]  According to Defendants,

the use of the word "may" in § 480-14(b) merely gives the Attorney General the discretion to determine whether or not to bring a class action on behalf of consumers.  If he decides to do so, he must follow § 480-14(b).  Defendants contend that courts interpret numerous statutes as creating exclusive remedies, even though the statute states that a plaintiff "may" bring that type of claim.  [Id. at 13-14.]

Defendants argue that the other statutes cited by the Attorney General do no authorize him to seek monetary relief on behalf of consumers.  Section 480-2(d) does not create a cause of action; § 480-3.1 and § 480-13.5 only authorize the Attorney General to bring an action to recover penalties payable to the State of Hawai`i; § 480-15 only authorizes the Attorney General to bring actions for injunctive relief for violations of Chapter 480; and § 661-10 only authorizes actions for monetary damages or penalties for the State.  Even if § 661-10 does allow actions to recover monetary damages for consumers, the more specific statute - § 480-14(b) - controls.  [Id. at 15-16.]

Defendants argue that the Attorney General's denial in each case that he is asserting a class action and his denial that he brought each action on behalf of a class are belied by the allegations in each of the Complaints.  According to Defendants, the Attorney General's denials are legal conclusions that this Court must disregard.  The Attorney General clearly seeks Chapter

480 relief on behalf of Hawai`i consumers pursuant to the *parens patriae* doctrine and any other applicable authority.  Defendants assert that the applicable authority is § 480-14(b), which provides that such actions are class actions, and Defendants point out that the Complaints specifically cite § 480-14 as the source of the Attorney General's authority to bring these cases. [Id. at 17-18.]

Further, Defendants argue that these actions constitute "class actions" as defined in CAFA.  Defendants note that Haw. Rev. Stat. § 480-1 specifies that a class action under Chapter 480 is a class action as provided for in Haw. R. Civ. P. 23, and Haw. R. Civ. P. 23 is essentially identical to Fed. R. Civ. P. 23.  Defendants argue that it is irrelevant that the Attorney General is not a member of the class because CAFA does not require that the plaintiff be a member of the proposed class. Pursuant to 28 U.S.C. § 1332(d)(1)(B), all that is required is that the representative person be authorized to bring suit on behalf of that class, and the Attorney General has that authority pursuant to § 480-14(b).  CAFA does not require that the representative be an adequate representative under federal class action case law; it only requires that the representative have authority under state law.  [Id. at 19-21.]  Defendants argue that the legislative history of CAFA and other authority indicate that CAFA's removal provisions are to be interpreted liberally.

21

According to Defendants, the Ninth Circuit has recognized that CAFA provides a right of removal for state class actions, even if the action could not have been brought as a class action in federal court. [Id. at 21-22.]

Defendants argue that Chimei and Bank of America are distinguishable and actually support removal in these cases. The Washington and California statutes at issue in Chimei did not provide that the type of actions at issue should be brought as class actions, and the Nevada statute at issue in Bank of America did not authorize the Nevada attorney general to bring class actions. In contrast, Chapter 480 requires the Attorney General to bring his *parens patriae* action under § 480-14(b) as a Haw. R. Civ. P. 23 class action. As to the Attorney General's argument that Bank of America rejected a claim-by-claim analysis, Defendants point out that the Ninth Circuit rejected a claim-by-claim analysis in the determination of whether an action was a *parens patriae* action or not. They assert that this Court must apply the general rule that, in determining whether removal is proper, a district court looks at each claim individually because even one claim in a complaint can make removal of the action proper. [Id. at 22-24.] To the extent that other claims are not independently removable, Defendants urge this Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). [Id. at 40.]

22

Defendants state that they raised the "mass action" argument to preserve it for appeal, but they acknowledge that Bank of America rejects this argument. [Id. at 25.]

**B.  Complete Preemption**

Defendants reiterate that these cases are removable under the complete preemption doctrine applied in Beneficial National.  First, the fees for payment protection plans are interest under the National Bank Act and pursuant to the 12 C.F.R. § 7.4001(a) definition of interest.  Defendants argue that the fact that payment protection plans are optional does not mean that the fees for such plans are not interest.  Other optional fees, such as late fees, over-limit fees, insufficient funds fees, and prepayment penalties, are considered interest.  [Id. at 26-30.]

Further, Defendants argue that the fees for payment protection plans are not compensation for a separate service because what the cardholders pay for is an extension of additional credit and the payment protection plans amend the underlying loan agreements.  Nor are the payment protection plans considered insurance.  Defendants assert that, even if the plans are like insurance, only the fee that the lender pays to a third party to insure against the risk of the borrower's default is excluded from the definition of interest.  The cardholder's fees to participate in the plan are interest.  [Id. at 31-32.]

23

Defendants argue that <u>JPMorgan</u> does not support the Attorney General's position.  In that case, the district court accepted the complaint's assertion that the plan fees were not interest, and the defendants did not offer contrary evidence.  In the instant case, however, Defendants have submitted undisputed declarations supporting their characterization of the plan fees as interest.  [<u>Id.</u> at 32-33 & n.25 (citing Fink Decl. ¶¶ 5-6; Jantzi Decl. ¶¶ 4-5; Choltus Decl. ¶¶ 7-8).]  Defendants acknowledge that not all of the allegations in the Complaints challenge the amount of the banks' interest charges.  Defendants, however, argue that other allegations do challenge the amount the plan charges and therefore the Complaints were properly removed. [<u>Id.</u> at 34.]

At a minimum, the unjust enrichment claim challenges the amount of the payment protection plan fees because there would be no unjust enrichment unless the banks' charges were excessive in comparison to the value the consumers obtain from the plans.  [<u>Id.</u>]  Defendants argue that the allegations of the Complaints support this characterization of the unjust enrichment claim.  [<u>Id.</u> at 35-36 & nn.26-27 (citing CV 12-00268, Complaint at ¶¶ 7, 61, 69; CV 12-00271, Complaint at ¶¶ 7, 61, 69; CV 12-00263, Complaint at ¶¶ 7, 61, 69; CV 12-00269, Complaint at ¶¶ 7, 66, 74; CV 12-00270, Complaint at ¶¶ 7, 61, 69; CV 12-00266, Complaint at ¶¶ 7, 63, 70).]  Defendants argue that other federal

24

courts have ruled that similar unjust enrichment claims challenge the amount of interest and trigger preemption, and those courts have ruled that the complete preemption holding of <u>Beneficial National</u> is not limited to usury claims. [<u>Id.</u> at 36-37 & n.28 (citing cases).]  Defendants note that the Attorney General relies upon <u>JPMorgan Chase</u>, but that case involved claims similar to the Attorney General's UDAP claims; it did not involve an unjust enrichment claim. [<u>Id.</u> at 37.]

Defendants also contend that the same analysis applies to Discover Bank because "[s]ection 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA"), 12 U.S.C. § 1831d, incorporates the operative language of 12 U.S.C. §§ 85 and 86 and provides the same protection to state-chartered banks." [<u>Id.</u> at 38 (footnote omitted).]  Section 1831d(a) allows state-chartered banks to assess interest at the rate allowed by the law of the state where the bank is located, and Delaware allows a bank to charge any agreed upon rate.  The Attorney General's position is that the rate Discover Bank charges exceeds the rate allowed under Hawai`i law.  Thus, the complete preemption doctrine applies. [<u>Id.</u> at 39-40.]

### C.   <u>Grable Argument</u>

Defendants acknowledge that <u>Bank of America</u> rejected the <u>Grable</u> argument the Citi Defendants raised in their Notice of Removal.  The Citi Defendants raised the argument to preserve it

for appeal, and they rely on the other grounds asserted in the
Memorandum in Opposition. [Id. at 41.]

### D.   **Removal Expenses**

        Defendants argue that, if this Court grants remand, the
Attorney General is not entitled to removal related expenses
because there is no clearly established law which forecloses
Defendants' bases for removal.  The Notices of Removal present
issues of first impression, and therefore awards of expenses are
not warranted. [Id. at 41-42.]

## IV.  **The Attorney General's Reply**

        In the Reply, the Attorney General largely reiterates
the arguments he raised in the Omnibus Motion.

### A.   **CAFA**

        The Attorney General emphasizes that he did not plead a
class action and that no authority requires him to bring these
*parens patriae* consumer protection actions as class actions.
Thus, whether Haw. R. Civ. P. 23 is a similar statute for CAFA
purposes is irrelevant because the Attorney General did not file
these actions pursuant to Haw. R. Civ. P. 23.  The Attorney
General notes that the Complaints do not plead the elements of a
Haw. R. Civ. P. 23 action. [Reply at 3-4.]  The Attorney General
argues that the Complaints' assertions that they are not brought
on behalf of a class are not legal conclusions which this Court
can ignore; they are assertions of fact.  The Attorney General

26

also reiterates that the Complaints do not establish that these cases meet the requirements of CAFA.  [Id. at 5-6.]

The Attorney General asserts that he is bringing this action on behalf of the State, in its own right, not on behalf of Defendants' victimized customers.  The Attorney General points out that the Middle District of Florida has recently adopted a similar interpretation and ruled that the card holders' rights were separate and distinct from the state's.  [Id. at 6-7 (citing Spinelli v. Capital One Bank, USA, et al., No. 8:08-cv-00132, Dkt. 253 (M.D. Fla. Aug. 22, 2012)).]

The Attorney General also reiterates that Defendants' interpretation of § 480-14(b) ignores the broad authority granted in § 661-10.  The Attorney General points out that the Memorandum in Opposition did not respond to the Attorney General's argument regarding the interpretation of the term "may" in § 480-14(b), in light of the fact that "may" is used in close proximity to the term "shall".  The Attorney General argues that this is further evidence that Defendants' interpretation of § 480-14(b) is erroneous.  [Id. at 7-8.]  The Attorney General contends that the case law Defendants cite in support of their interpretation of § 480-14(b) is inapplicable because those cases do not address Chapter 480 and the statutes those case do address are incomparable to § 480-14(b).  [Id. at 9.]  The cases Defendants cited which do discuss Chapter 480 do not support their position.

27

[Id. at 13-14.]

The Attorney General also argues that the Chapter 480 legislative history which Defendants cited does not support either Defendants' interpretation of "may" or their position that Chapter 480 limits the Attorney General's authority. [Id. at 11.] Further, Defendants ignore the portions of the legislative history which clearly state that the Hawai`i Legislature intended to allow antitrust suits by indirect purchasers, which the Attorney General argues shows that the legislature was "trying to help, not hinder the Attorney General." [Id. at 11-12 (citing Conf. Com. Rep. 104 on H.B. No. 1525 at ¶¶ 3, 5).] The Attorney General, however, states that § 480-14(b) and its meaning are not actually at issue in this case because he did not file these actions under § 480-14(b). [Id. at 11.]

B.   **Complete Preemption**

The Attorney General argues that the Memorandum in Opposition did not raise any authority to refute the Omnibus Motion's argument that consumer protection cases do not lie in usury. [Id. at 14.]

As to the issue of whether fees for payment protection plans are interest, the Attorney General argues that late fees, loan origination fees, and loan discount fees are distinguishable and therefore cases holding those fees to be interest do not support Defendants' position. The Attorney General urges this

28

Court to follow JPMorgan because it addressed and distinguished the authority that Defendants rely upon here.   The Attorney General urges the Court to disregard the declarations submitted with the Memorandum in Opposition because the Court should look to the four-corners of the pleadings and should not rely on the self-serving characterization by Defendants' representatives about the payment protection plans.   The Attorney General also argues that, even if this Court considered the declarations, they would not change the JPMorgan analysis.   [Id. at 15-18.]

Even assuming, *arguendo*, that the fees for the payment protection plans are interest, the Attorney General reiterates that § 86 was not intended to provide a remedy, let alone an exclusive remedy, for the unfair charging of plan fees to customers who did not knowingly agree to the charge or for the fraudulent administration of those plans.   The Attorney General argues that Congress has not manifested a clear intent to allow removal of this type of cases.   Thus, the Attorney General reiterates that complete preemption does not apply because the instant cases do not lie in usury.   [Id. at 18-20.]

The Attorney General urges the Court to grant his motions to remand and to order Defendants to pay his removal related expenses.

**V.   Defendants' Sur-reply**

In Defendants' Sur-reply, they argue that a district court may resolve factual disputes relevant to the jurisdictional issues raised in a motion to remand by considering evidence, including affidavits and testimony.  [Sur-reply at 5 (quoting McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988)).] Defendants contend that district courts do so routinely, and the cases the Attorney General cited do not contradict this principle.  Thus, Defendants urge the Court to consider the declarations which Defendants submitted with the Memorandum in Opposition.  [Id. at 6-7.]

### STANDARD

A plaintiff may file a motion for remand to challenge the removal of an action from state court to federal court.  The removal is proper under 28 U.S.C. § 1441(a) as long as the plaintiff could have brought the action in federal court. Section 1441, however, is strictly construed against removal, and courts resolve any doubts about the propriety of removal in favor of remanding the case to state court.  See Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1252 (9th Cir. 2006).  The party seeking to remove the case bears the burden of establishing the existence of federal jurisdiction.  See Cal. ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 838 (9th Cir. 2004).

## DISCUSSION

I.   CAFA

     In Washington v. Chimei Innolux Corp., the Ninth

Circuit stated:

> Congress enacted CAFA to "'curb perceived
> abuses of the class action device which, in the
> view of CAFA's proponents, had often been used to
> litigate multi-state or even national class
> actions in state courts.'"  United Steel v. Shell
> Oil Co., 602 F.3d 1087, 1090 (9th Cir. 2010)
> (quoting Tanoh v. Dow Chem. Co., 561 F.3d 945, 952
> (9th Cir. 2009)).  CAFA vests a district court
> with original jurisdiction over "a class action"
> where: (1) there are one-hundred or more putative
> class members; (2) at least one class member is a
> citizen of a state different from the state of any
> defendant; and (3) the aggregated amount in
> controversy exceeds $5 million, exclusive of costs
> and interest.  28 U.S.C. § 1332(d)(2), (5)(B),
> (6).

> CAFA authorizes the removal of class action
> lawsuits from state to federal court when the
> jurisdictional requirements are satisfied.   28
> U.S.C. § 1332(d)(2).  However, the general
> principles of removal jurisdiction apply in CAFA
> cases. . . .

659 F.3d 842, 847 (9th Cir. 2011).

     In Chimei, the Ninth Circuit considered whether parens

patriae actions brought by the Washington attorney general and

the California attorney general "alleging that Defendants engaged

in a conspiracy to fix the prices of thin-film transistor liquid

crystal display ('TFT-LCD') panels, and that state agencies and

consumers were injured by paying inflated prices for products

containing TFT-LCD panels."  Id. at 846.  The Ninth Circuit set

31

forth the applicable analysis as follows:

> The question of whether these parens patriae lawsuits are class actions within the meaning of CAFA is one of statutory construction.  As always, our starting point is the plain language of the statute.  Children's Hosp. & Health Ctr. v. Belshe, 188 F.3d 1090, 1096 (9th Cir. 1999).  "[W]e examine not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy."  Id.  If the plain meaning of the statute is unambiguous, that meaning is controlling and we need not examine legislative history as an aid to interpretation unless "the legislative history clearly indicates that Congress meant something other than what it said."  Carson Harbor Village, Ltd. v. Unocal Corp., 270 F.3d 863, 877 (9th Cir. 2001) (en banc).  If the statutory language is ambiguous, then we consult legislative history.  United States v. Daas, 198 F.3d 1167, 1174 (9th Cir. 1999).

Id. at 847-48 (alteration in Chimei).

The Ninth Circuit ultimately held that the district court properly remanded the actions and that the *parens patriae* actions at issue were not class actions within the meaning of CAFA.  Id. at 847.  The Ninth Circuit noted that neither action was filed pursuant to Fed. R. Civ. P. 23 or a similar state statute.[6]  Further, "[n]one of the state statutes contain the

---

[6] The relevant statutes in Chimei were Wash. Rev. Code § 19.86.080(1) and Cal. Bus. & Prof. Code § 16760(a)(1).  659 F.3d at 847.

Wash. Rev. Code § 19.86.080(1) authorizes the Washington attorney general to file a suit "in the name of the state, or as parens patriae on behalf of persons residing in the state" to "prevent the doing of any act herein prohibited or declared to be unlawful[.]"

Cal. Bus. & Prof. Code § 16760(a)(1) authorizes the
(continued...)

typical class action requirements of showing numerosity, commonality, typicality, or adequacy of representation." Id. at 848 (citing Marlo v. United Parcel Serv., Inc., 639 F.3d 942, 946 (9th Cir. 2011) ("To maintain a class action, a plaintiff must demonstrate numerosity, commonality, typicality, and adequate representation of the class interest.")).  The Ninth Circuit noted that not all representative actions are class actions and, unlike a traditional class action, a statutory *parens patriae* action could result in a settlement requiring only penalties paid to the public treasury, with no restitution to the victims of the alleged fraud.  Id.  The Ninth Circuit also noted that, although a *parens patriae* action's similarities to a Fed. R. Civ. P. 23 action are useful in determining whether the action is a class action for purposes of CAFA, they are not determinative because CAFA also requires that the allegedly similar statute authorize the action as a class action and that the action actually be brought as a class action.  Id. at 849-50.

The Complaints allege that the Attorney General "is authorized under . . . Haw. Rev. Stat. § 480-2(d), and under *parens patriae* authority, on behalf of the State and its citizens to enforce Hawaii law.  The Attorney General has the power to

_____

[6](...continued)
California attorney general to file a suit as parens patriae to "secure monetary relief . . . for injury sustained by those natural persons to their property by reason of any violation of this chapter."

33

bring these claims on behalf of the State under the provisions of Haw. Rev. Stat. § 661-10." _See, e.g._, CV 12-00263, Complaint at ¶ 8. The Complaints also allege that the Attorney General

> "may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section." _Id._ at § 480-2(d). The Attorney General is specifically charged with the administration of the UDAP, and may act _sua sponte_ as the agent and legal representative of the State **in civil proceedings to enforce the statute**.

_See, e.g._, _id._ at ¶ 74 (emphasis added).

Defendants are correct that § 480-2(d) does not create a cause of action; it merely states, "[n]o person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section." The Attorney General, however, specifically seeks, in conjunction with Count I, "penalties of up to $10,000 for each violation of the UDAP ([Haw. Rev. Stat. § 480-3.1]) and injunctive relief (_id._ at 480-15)[,]" _see, e.g._, _id._ at ¶ 79,[7] and, in conjunction with

---

[7] Haw. Rev. Stat. § 480-3.1 states:

> Any person, firm, company, association, or corporation violating any of the provisions of section 480-2 shall be fined a sum of not less than $500 nor more than $10,000 for each violation, which sum shall be collected in a civil action brought by the attorney general or the director of the office of consumer protection on behalf of the State.  The penalties provided in this section are cumulative to the remedies or penalties available under all other laws of this
>                                        (continued...)

Count II, "additional penalties of up to $10,000 for each violation of the UDAP committed against elders."  See, e.g., id. (citing Haw. Rev. Stat. § 480-13.5(a)).[8]  The Attorney General has therefore clearly invoked his civil enforcement authority under Chapter 480, and proceedings brought in that capacity are not class actions for purposes of CAFA.

The Attorney General has also invoked his "*parens patriae* authority, on behalf of the State and its citizens to enforce Hawaii law."  See, e.g., id. at ¶ 8.  Section 480-14(b) expressly refers to the Attorney General's authority to bring a parens patriae action to recover damages on behalf of Hawai`i consumers.  It states:

> The attorney general of the State shall be authorized to bring a class action for indirect purchasers asserting claims under this chapter. The attorney general or the director of the office of consumer protection may bring a class action on behalf of consumers based on unfair or deceptive acts or practices declared unlawful by section

---

[7](...continued)
State.  Each day that a violation of section 480-2 occurs shall be a separate violation.

Haw. Rev. Stat. § 480-15 states: "The attorney general may bring proceedings to enjoin any violation of this chapter; provided that the director of the office of consumer protection may also bring proceedings to enjoin any violation of section 480-2."

[8] Haw. Rev. Stat. § 480-13.5 states: "If a person commits a violation under section 480-2 which is directed toward, targets, or injures an elder, a court, in addition to any other civil penalty, may impose a civil penalty not to exceed $10,000 for each violation."

35

> 480-2.  Actions brought under this subsection
> shall be brought as parens patriae on behalf of
> natural persons residing in the State to secure
> threefold damages for injuries sustained by the
> natural persons to their property by reason of any
> violation of this chapter.

Haw. Rev. Stat. § 480-14(b).  This provision gives the Attorney

General the authority to bring *parens patriae* class actions to

recover damages on behalf of Hawai`i consumers who were indirect

purchasers.  Although the Attorney General makes much of the use

of the word "may" as opposed to the word "shall", the statement

that the Attorney General "may bring a class action" is merely a

recognition that the Attorney General has the discretion, as

opposed to a statutory obligation, to bring such actions in

response to violations of § 480-2.  Reading subsection (b) in the

context of section 480-14 as a whole, as a well as in the context

of Chapter 480 in general, this Court rejects the Attorney

General's interpretation of § 480-14(b) as authorizing the

Attorney General to bring *parens patriae* suits regarding

violations of § 480-2 as either a class action or a non-class

action.  Based upon the plain language of the provision, read in

context, the only reasonable interpretation of § 480-14(b) is: if

the Attorney General elects in his discretion to bring an action

to recover damages on behalf of Hawai`i consumers pursuant to

§ 480-14(b), he can only do so in a *parens patriae* class action.

A class action for purposes of CAFA "means any civil

action filed under rule 23 of the Federal Rules of Civil

Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action[.]"  28 U.S.C. § 1332(d)(1)(B).  The term class "class action" is defined, for purposes of Haw. Rev. Stat. Chapter 480, as "includ[ing] the definition as provided in rule 23 of the Hawaii rules of civil procedure."  Haw. Rev. Stat. § 480-1.  The key terms of Haw. R. Civ. P. 23 are substantively identical to Fed. R. Civ. P. 23, but this does not end the inquiry into whether § 480-14(b) authorizes *parens patriae* class actions pursuant to a rule that is "similar" to Fed. R. Civ. P. 23 for purposes of CAFA.  The Ninth Circuit has recognized that, although CAFA does not require that the state class action scheme contain all of the requirements and procedures associated with Fed. R. Civ. P. 23, "it must, at a minimum, provide a procedure by which a member of a class whose claim is **typical** of all members of the class can bring an action not only **on his own behalf** but also on behalf of all others in the class . . . ."  Chimei, 659 F.3d at 849 (alteration in Chimei) (emphases added) (quoting W. Vir. ex rel. McGraw v. CVS Pharm., Inc., 646 F.3d 169, 175 (4th Cir. 2011)).

        In the instant case, the Attorney General argues that he is not asserting a class action because he does not have a claim that is typical of the members of the purported class. While the State and the Attorney General certainly have an

interest in protecting the State's consumers from predatory banking practices, the State and its agencies do not have consumer credit cards, and thus they have not been harmed in the same manner as the purported class members have been harmed by the allegedly predatory practices Defendants employ in connection with the credit card ancillary plans.  This Court, however, notes that, if that is what is required for the Attorney General to bring a § 480-14(b) class action claim, there would be many instances, such as in the instant case, in which the Attorney General would lack the typicality necessary to pursue a class action.  Thus, the Attorney General would not be able to utilize this process that the Hawai`i Legislature created as one of the tools for the Attorney General to protect the interests of Hawai`i consumers.  The Hawai`i Legislature could not have intended to create such an illusive process.

Ultimately, however, this Court need not decide upon the typicality question in the instant cases.  Even assuming, *arguendo*, that Attorney General satisfies the statutory requirement of typicality, this Court must also consider whether the Attorney General has brought the instant cases as class actions.  In holding that the *parens patriae* suits at issue in Chimei were not class actions, the Ninth Circuit noted that "it is not only that parens patriae suits are not 'labeled "class actions,"' it is that they also lack statutory requirements for

numerosity, commonality, typicality, or adequacy of representation that would make them sufficiently 'similar' to actions brought under Rule 23, and that they do not contain certification procedures." 659 F.3d at 850. Conversely, if even there is a similar state statute with the requisite class action components, the plaintiff must actually invoke that statute or otherwise label the case a "class action."

In the instant cases, however, the Complaints expressly state that the Attorney General is not bringing these actions "on behalf of a class or any group of persons that can be construed as a class." See, e.g., CV 12-00263, Complaint at ¶ 8. Further, the Complaints do not invoke § 480-14(b). The Court therefore interprets the Complaints as bringing the Attorney General's *parens patriae* claims pursuant to either Hawai`i state common law regarding *parens patriae* actions or the Attorney General's general powers under § 661-10.

This Court recognizes that it is not clear whether the Attorney General can state plausible *parens patriae* claims based upon either Hawai`i common law or § 661-10. There is a dearth of Hawai`i case law addressing common law *parens patriae* actions asserting consumer protection claims. Most cases addressing the state's *parens patriae* authority relate to charitable trusts, termination of parental rights, or civil commitment. See, e.g., Takabuki v. Ching, 67 Haw. 515, 521 n.3, 695 P.2d 319, 323 n.3

(1985) (discussing "[t]he function of the attorney general, as *parens patriae* of charitable trusts" (citations omitted)); <u>Woodruff v. Keale</u>, 64 Haw. 85, 99, 637 P.2d 760, 769 (1981) ("In the case of involuntary termination, it is only after the parents have demonstrated some form of 'unfitness' as defined by the legislature in [Haw. Rev. Stat.] § 571-61(b) that the state intervenes as *parens patriae* and considers the best interests of the child."); <u>In re Doe</u>, 102 Hawai`i 528, 543, 78 P.3d 341, 356 (Ct. App. 2003) ("The state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves[.]" (quoting <u>Addington v. Texas</u>, 441 U.S. 418, 426 (1979))).

Further, even assuming, *arguendo*, that Hawai`i recognizes a common law *parens patriae* consumer protection claim, it is unclear what remedies would be available for such a claim. <u>Cf.</u> <u>In re Dynamic Random Access Memory (Dram) Antitrust Litig.</u>, No. M 02-1486 PJH, 2007 WL 2517851, at *8 (N.D. Cal. Aug. 31, 2007) ("there is no broadly recognized common law parens patriae right to pursue monetary damages claims, and cases discussing the common law parens patriae right have generally been limited to cases seeking injunctive or other equitable relief" (citing <u>Hawaii v. Standard Oil Co.</u>, 405 U.S. 251 (1972); <u>In re Multidistrict Vehicle Air Pollution</u>, 481 F.2d 122, 131 (9th Cir. 1973) (distinguishing availability of parens patriae authority

for suits seeking injunctive relief, from suits seeking damages))).

There is also a dearth of Hawai`i case law interpreting or applying § 661-10. Specifically, there is no case law stating that § 661-10 gives the Attorney General the authority to bring a non-class action *parens patriae* suit seeking the type of relief requested in the Complaints.

In particular, the issue of the Attorney General's capacity to bring the unjust enrichment claim is troubling. Count III of the Complaints alleges that Defendants were unjustly enriched when they accepted the benefits of improper charges for ancillary credit card products to Hawai`i consumers. See, e.g., CV 12-00263, Complaint at ¶¶ 85-88. The Attorney General seeks to make the affected consumers whole, and the Attorney General prays for "restitution and disgorgement of monies[.]" See, e.g., id. at ¶¶ 88, Relief ¶ 3. Although the Attorney General pled this request in terms of equitable relief, it appears that the Attorney General is essentially seeking damages incurred by Hawai`i consumers who were allegedly injured by Defendants' predatory practices. If that is the true nature of the Attorney General's claim, the Attorney General must assert the claim through a § 480-14(b) *parens patriae* class action. As previously stated, § 480-14(b) does not authorize the Attorney General to recover damages incurred by Hawai`i consumers through a non-class

action *parens patriae* suit.  To the extent that § 661-10 would,

in general, authorize non-class action *parens patriae* suits for

damages, § 480-14(b) is the more specific statute and is

therefore controlling.  See <u>Spirent Holding Corp. v. State of

Hawai`i, Dep't of Taxation</u>, 121 Hawai`i 220, 228, 216 P.3d 1243,

1251 (Ct. App. 2009).[9]

Thus, Defendants may be right that the Attorney

General's unjust enrichment claims are wolves in sheep's

clothing, that is § 480-14(b) claims which the Attorney General

has attempted to dress up as common law and § 661-10 claims.

This issue, however, is for the parties to litigate at a later

stage in the litigation.  This Court cannot, at this stage of the

proceedings, conclude that it must: 1) disregard the Attorney

General's express disclaimer that he is pursuing a class action;

and 2) interpret the Attorney General's Complaints as asserting

class actions eligible for removal pursuant to CAFA.  <u>Cf.</u> <u>Tanoh</u>

_____

[9] The Intermediate Court of Appeals recognized in <u>Spirent
Holding</u> that:

> It is a well-established tenet of statutory
> construction that "where there is a plainly
> irreconcilable conflict between a general and a
> specific statute concerning the same subject
> matter, the specific will be favored.  However,
> where the statutes simply overlap in their
> application, effect will be given to both if
> possible, as repeal by implication is disfavored."

121 Hawai`i at 228, 216 P.3d at 1251 (quoting <u>Richardson v. City
& County of Honolulu</u>, 76 Hawai`i 46, 55, 868 P.2d 1193, 1202
(1994)).

42

v. Dow Chem. Co., 561 F.3d 945, (9th Cir. 2009) ("In this case, concluding that plaintiffs' claims fall outside CAFA's removal provisions is not absurd, but rather is consistent with both the well-established rule that plaintiffs, as masters of their complaint, may choose their forum by selecting state over federal court and with the equally well-established presumption against federal removal jurisdiction." (citation omitted)).  This Court therefore CONCLUDES, for purposes of the instant motions to remand, that it does not have removal jurisdiction pursuant to CAFA over the instant cases.[10]

## II.  Complete Preemption

Defendants have also removed the instant cases based on the complete preemption doctrine.  They assert that federal law preempts the Attorney General's claims in the instant cases, in spite of the fact that each Complaint "specifically disclaims any such claims that would support removal of this action to a United States District Court on the basis of diversity, jurisdictional mandates under [CAFA], federal question jurisdiction, or any other basis."  See, e.g., CV 12-00263, Complaint at ¶ 9 (citations omitted).  To the extent that there are any other

------

[10] Defendants have acknowledged that, pursuant to Nevada v. Bank of America Corp., 672 F.3d 661 (9th Cir. 2012), the instant actions are not "mass actions" under CAFA.  [Mem. in Opp. at 25.] Insofar as Bank of America is controlling precedent, this Court CONCLUDES that it does not have removal jurisdiction over the instant cases under CAFA's provisions regarding mass actions.

claims that are not completely preempted, Defendants argue that this Court may exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367.

> The Ninth Circuit has stated that, generally:

> > Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "For a case to 'arise under' federal law, a plaintiff's well-pleaded complaint must establish either (1) that federal law creates the cause of action or (2) that the plaintiff's asserted right to relief depends on the resolution of a substantial question of federal law." Peabody Coal, 373 F.3d at 949 (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)). Federal jurisdiction cannot hinge upon defenses or counterclaims, whether actual or anticipated. Vaden v. Discover Bank, 556 U.S. 49, 129 S. Ct. 1262, 1272, 173 L. Ed. 2d 206 (2009).

K2 Am. Corp. v. Roland Oil & Gas, LLC, 653 F.3d 1024, 1029 (9th Cir. 2011). "One exception to the statutory 'well-pleaded complaint' rule is when Congress 'so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" Proctor v. Vishay Intertechnology Inc., 584 F.3d 1208, 1219 (9th Cir. 2009) (alteration in Proctor) (some citations omitted) (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, 107 S. Ct. 1542 (1987)).

## A.    Preemption by the National Bank Act

In Beneficial National Bank v. Anderson, 539 U.S. 1 (2003), the United States Supreme Court stated:

44

In addition to this Court's longstanding and consistent construction of the National Bank Act as providing an exclusive federal cause of action for usury against national banks, this Court has also recognized the special nature of federally chartered banks.  Uniform rules limiting the liability of national banks and prescribing exclusive remedies for their overcharges are an integral part of a banking system that needed protection from "possible unfriendly State legislation."  Tiffany v. National Bank of Mo., 18 Wall. 409, 412, 21 L. Ed. 862 (1874).  The same federal interest that protected national banks from the state taxation that Chief Justice Marshall characterized as the "power to destroy," McCulloch v. Maryland, 4 Wheat. 316, 431, 4 L. Ed. 579 (1819), supports the established interpretation of §§ 85 and 86 that gives those provisions the requisite pre-emptive force to provide removal jurisdiction.  In actions against national banks for usury, these provisions supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state law.  Because §§ 85 and 86 provide the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim of usury against a national bank. Even though the complaint makes no mention of federal law, it unquestionably and unambiguously claims that petitioners violated usury laws.  This cause of action against national banks only arises under federal law and could, therefore, be removed under § 1441.

539 U.S. at 10-11.  The National Bank Act provides:

> Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no

more, except that where by the laws of any State a
different rate is limited for banks organized
under State laws, the rate so limited shall be
allowed for associations organized or existing in
any such State under title 62 of the Revised
Statutes.  When no rate is fixed by the laws of
the State, or Territory, or District, the bank may
take, receive, reserve, or charge a rate not
exceeding 7 per centum, or 1 per centum in excess
of the discount rate on ninety-day commercial
paper in effect at the Federal reserve bank in the
Federal reserve district where the bank is
located, whichever may be the greater, and such
interest may be taken in advance, reckoning the
days for which the note, bill, or other evidence
of debt has to run.  The maximum amount of
interest or discount to be charged at a branch of
an association located outside of the States of
the United States and the District of Columbia
shall be at the rate allowed by the laws of the
country, territory, dependency, province,
dominion, insular possession, or other political
subdivision where the branch is located.  And the
purchase, discount, or sale of a bona fide bill of
exchange, payable at another place than the place
of such purchase, discount, or sale, at not more
than the current rate of exchange for sight drafts
in addition to the interest, shall not be
considered as taking or receiving a greater rate
of interest.

12 U.S.C. § 85.  Section 86 provides the remedy for violations of

§ 85.

The taking, receiving, reserving, or charging a
rate of interest greater than is allowed by
section 85 of this title, when knowingly done,
shall be deemed a forfeiture of the entire
interest which the note, bill, or other evidence
of debt carries with it, or which has been agreed
to be paid thereon.  In case the greater rate of
interest has been paid, the person by whom it has
been paid, or his legal representatives, may
recover back, in an action in the nature of an
action of debt, twice the amount of the interest
thus paid from the association taking or receiving
the same: Provided, That such action is commenced

46

within two years from the time the usurious transaction occurred.

12 U.S.C. § 86.

The Attorney General argues that the complete preemption doctrine does not apply because: 1) the charges for Defendants' ancillary products do not constitute interest under the National Bank Act; and 2) even assuming, *arguendo*, that the charges are interest, the claims in these cases do not challenge the rate of interest charged.

### 1.   **Whether the Charges Are Interest**

The National Bank Act does not define the term "interest", as the term is used in § 85 and § 86.  The regulations promulgated pursuant to the National Bank Act, however, contain the following definition:

> The term "interest" as used in 12 U.S.C. 85 includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended.  It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, overlimit fees, annual fees, cash advance fees, and membership fees.  It does not ordinarily include appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finders' fees, fees for document preparation or notarization, or fees incurred to obtain credit reports.

12 C.F.R. § 7.4001(a); see also <u>Smiley v. Citibank (S.D.), N.A.</u>,

47

517 U.S. 735, 744-45 (1996) (holding that § 7.4001(a) is entitled to deference and that it is a reasonable interpretation of the statute).

Defendants argue that the payment protection plans and other products at issue in these cases are debt cancellation contracts and/or debt suspension agreements,[11] which are governed by federal law.  12 C.F.R. § 37.1 states:

> (a) Authority.  A national bank is authorized to enter into debt cancellation contracts and debt suspension agreements and charge a fee therefor, in connection with extensions of credit that it makes, pursuant to 12 U.S.C. 24(Seventh).

---

[11] A debt cancellation contract is defined as:

> a loan term or contractual arrangement modifying loan terms under which a bank agrees to cancel all or part of a customer's obligation to repay an extension of credit from that bank upon the occurrence of a specified event.  The agreement may be separate from or a part of other loan documents.

12 C.F.R. § 37.2(f).  A debt suspension agreement is defined as:

> a loan term or contractual arrangement modifying loan terms under which a bank agrees to suspend all or part of a customer's obligation to repay an extension of credit from that bank upon the occurrence of a specified event.  The agreement may be separate from or a part of other loan documents.  The term debt suspension agreement does not include loan payment deferral arrangements in which the triggering event is the borrower's unilateral election to defer repayment, or the bank's unilateral decision to allow a deferral of repayment.

§ 37.2(g).

(b) Purpose.  This part sets forth the standards that apply to debt cancellation contracts and debt suspension agreements entered into by national banks.  The purpose of these standards is to ensure that national banks offer and implement such contracts and agreements consistent with safe and sound banking practices, and subject to appropriate consumer protections.

(c) Scope.  This part applies to debt cancellation contracts and debt suspension agreements entered into by national banks in connection with extensions of credit they make.  **National banks' debt cancellation contracts and debt suspension agreements are governed by this part and applicable Federal law and regulations, and not by part 14 of this chapter or by State law.**

(Emphasis added.)

    Some district courts have recognized that the National Bank Act preempts claims related to debt cancellation contracts and debt suspension agreements.  See, e.g., Denton v. Dep't Stores Nat'l Bank, No. 10-CV-5830 RBL, 2012 WL 1204940, at *4 (W.D. Wash. Apr. 11, 2012) (ruling that the National Bank Act preempted the plaintiff's claim for breach of the covenant of good faith and fair dealing where the plaintiff alleged that she applied for and was denied benefits under the defendant's payment protection service).  This Court concludes that, based upon the definitions in the applicable regulations, the ancillary products at issue in the instant cases constitute debt cancellation contracts or debt suspension agreements.  The Court acknowledges that the mere fact that federal regulations govern debt cancellation contracts and debt suspension agreements and the

fact that Defendants may raise these regulations as part of their defenses to the Attorney General's claims do not alone create federal question jurisdiction.

The fact that the ancillary products at issue in these cases are debt cancellation contracts or debt suspension agreements, however, supports Defendants' position that the fees assessed for these products are interest for purposes of the National Bank Act.  When a bank enters into a debt cancellation contract, the bank agrees that, if certain specified events occur, the bank will "cancel all or part of a customer's obligation to repay an extension of credit from that bank . . . ."  § 37.2(f).  Similarly, when a bank enters into a debt suspension agreement, the bank agrees that, if certain specified events occur, the bank will "suspend all or part of a customer's obligation to repay an extension of credit from that bank . . . ."  § 37.2(g).

The Fink Declaration explains the nature of the payment protection plans that Chase Bank USA, N.A. ("Chase") has sold to Hawai`i residents:

> 4.   Chase's payment protection plans are optional amendments of Chase cardholder agreements that modify the contractual terms for repayment of a customer's credit card loan. . . .

> 5.   Chase cardholders ordinarily must make minimum payments on their credit card account balance each month.  Under a payment protection plan, a cardholder's obligation to make these minimum payments is suspended or cancelled in

whole or in part under the circumstances covered
by the plan. . . .

6.   Chase's payment protection plans extend
additional credit to cardholders in some or all of
the following ways: (i) they relieve customers of
minimum payment obligations, thus extending the
term of the loan and allowing customers to retain
loaned funds for a longer period of time before
repaying them, (ii) they allow customers to retain
loaned funds on more favorable terms (*i.e.*,
without paying interest charges that would accrue
in the absence of the plan, and without paying
late fees that otherwise would accrue if the
customer were to fail to make a minimum payment),
(iii) they relieve customers from the prospect of
breaching or defaulting on their credit card loan
terms, (iv) they allow customers to continue
drawing on the credit extended by their credit
card account under circumstances in which it
otherwise might be reduced or withdrawn . . . ,
and (v) the plans may permanently relieve
customers of some or all of their loan balance.
Chase charges a fee for the plans as compensation
for these extensions of credit.  These fees
ordinarily are calculated as a percentage of the
customer's outstanding credit card loan balance.

[Fink Decl. at ¶¶ 4-6.]  The Jantzi Declaration includes similar

testimony regarding the payment protection plans sold by Capital

One Bank (USA) N.A, [Jantzi Decl. at ¶¶ 4-5,] and the Choltus

Declaration includes similar testimony regarding the payment

protection plans sold by FIA Card Services, N.A. [Choltus Decl.

at ¶¶ 6-8].

In considering the instant motions for remand, this

Court has the discretion to consider declarations beyond the

pleadings.  Cf. Saulic v. Symantec Corp., No. SA CV 07-610 AHS

(PLAx), 2007 WL 5074883, at *9, (C.D. Cal. Dec. 26, 2007) ("A

court may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.' Singer [v. State Farm Mut. Auto. Ins. Co.,] 116 F.3d [373,] 377 [(9th Cir. 1997) (quoting Allen v. R & H Oil & Gas Co., 63 F.3d 1326,] 1335 [(5th Cir. 1995))]. It may also exercise its discretion to accept 'formal judicial admissions.' Id. at 376. In contrast, where defendants fail to offer 'any pleading, evidence, or admission that establishes that it is more likely than not that jurisdiction lies,' the Ninth Circuit has found it 'well within the court's discretion to remand to state court . . . ." Abrego Abrego [v. Dow Chem. Co.], 443 F.3d [686,] 691 [(9th Cir. 2006)]."). This Court recognizes that Defendants did not submit declarations regarding the ancillary products that the other three banks sold to Hawai`i consumers. The Court, however, notes that Defendants have presented joint arguments regarding the nature of the plans offered by all of the banks. Further, the Attorney General did not respond with any evidence, nor did the Attorney General request leave to submit any evidence, contesting Defendants' evidence and representations about the nature of the plans offered by Defendants. This Court therefore, in the exercise of its discretion, has considered the declarations that Defendants submitted, and finds that the declarations are sufficient evidence, for purposes of the instant motions only, of the nature of the payment protection plans at

issue in these cases.

Based on the definitions in the applicable regulations and based upon the declarations submitted by Defendants, this Court FINDS, for purposes of the instant motions only, that the charges Defendants impose for participation in the payment protection plans at issue in these cases constitute "interest" under the National Bank Act.

### 2.   Whether the Attorney General Challenges the Rate of Interest

The Attorney General also argues that the complete preemption doctrine discussed in Beneficial National does not apply because the instant cases do not challenge the rate of interest that Defendants impose.  The Attorney General's position, however, is belied by the allegations in the Complaints.  One of the Attorney General's central challenges to Defendants' practices regarding their ancillary products is that Defendants allegedly charge Hawai`i consumers significant fees to participate in the various types of payment protection plans even though the consumers may only receive minimal benefits, or may be ineligible to receive any benefits from the plans.  This is particularly so in the case of elderly consumers who are on a fixed income.

For example, the Complaints allege that "Defendants bill ineligible Hawaii citizens for this coverage, even though their status at the time of enrollment prevents them from

receiving benefits under the terms of these Payment Protection Plans." See, e.g., CV 12-00263, Complaint at ¶ 5.  The Attorney General also alleges that "[a]s a result of their unfair and deceptive marketing practices in connection with sales of Payment Protection [Plans], Defendants have increased profits by substantial sums, all thanks to products which provide virtually no benefit to the Hawaii residents who are nevertheless charged for these products month in and month out." See, e.g. id. at ¶ 69.  Particularly with regard to elderly consumers on fixed incomes, the Attorney General contends that the protection provided "may be illusory because the 'qualifying events'[, such as unemployment, disability, or natural disaster,] will not disrupt the income stream coming from a fixed income." See, e.g. id. at ¶ 44.  Count III, the unjust enrichment claim, alleges that the charges Defendants have imposed are improper and, by collecting these charges, Defendants have knowingly accepted benefits which they know they are not entitled to receive.  The Attorney General argues that Hawai`i consumers who have paid these charges should be made whole. See, e.g. id. at ¶ 88.  The Attorney General therefore prays for "restitution and disgorgement of monies . . . for all Hawaii consumers injured by Defendants' acts described in this Complaint." See, e.g. id. at Relief, ¶ 3.  By these allegations and prayers for relief, the Attorney General contends that: 1) the costs Defendants assessed

for their products exceeded the value conferred upon Hawaii consumers through the product; and 2) Hawai`i consumers have been injured as a result.  Insofar as this Court has already concluded that the charges for participation in these plans constitute interest, such allegations about the charges necessarily constitute challenges to the rate of interest.

This Court therefore CONCLUDES, based upon the existing record, that at least some of the Attorney General's claims challenge the rate of interest charged by Defendants in connection with their ancillary products and these claims constitute usury claims against national banks.[12]  This Court therefore CONCLUDES that the National Bank Act completely preempts such claims and that there is federal jurisdiction, based upon Beneficial National, over the Attorney General's usury claims against the national banks and their related defendants. Further, the Court CONCLUDES that it is appropriate to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the other claims in the cases involving national banks.  The Court therefore CONCLUDES that the defendants in CV 12-00263, CV 12-00266, CV 12-00268, CV 12-00270, and CV 12-00271 properly removed

---

[12] For example, the portions of the Attorney General's claims that are premised upon "slamming" allegations, *i.e.* that Defendants enrolled Hawai`i consumers in payment protection plans without the consumers' assent, do not challenge the rate of the interest charged for the consumers' participation in those plans. See, e.g., CV 12-00263, Complaint at ¶¶ 20-38 (setting forth factual allegations regarding "slamming").

those cases, and the Court DENIES the Attorney General's motions to remand in those cases.[13]

## B.   **Preemption by DIDA**

Discover Bank is not a national bank; it is "a Delaware state-chartered bank[.]"  [CV 12-00269, Notice of Removal at ¶ 5 (citing Complaint at ¶ 11; Exh. 9 to Notice of Removal (Decl. of Ryan C. Garton) at ¶ 3).]  The Discover Defendants argue that the Attorney General's claims against them are completely preempted pursuant to DIDA, 12 U.S.C. § 1831d, and 28 U.S.C. § 1331.  To the extent that there are any claims that are not completely preempted, the Discover Defendants argue that this Court may exercise supplemental jurisdiction over those claims.  [Id. at ¶ 10.]

Section 1831d states:

(a) Interest rates

In order to prevent discrimination against State-chartered insured depository institutions, including insured savings banks, or insured branches of foreign banks with respect to interest

---

[13] Insofar as this Court has concluded that it has jurisdiction over the Attorney General's Complaint in CV 12-00271, this Court need not address the Citi Defendants' Grable argument.  Further, Defendants have acknowledged that Nevada v. Bank of America Corp., 672 F.3d 661 (9th Cir. 2012), rejected the Grable argument that the Citi Defendants raised in their Notice of Removal.  [Mem. in Opp. at 41.]  Bank of America is binding precedent upon this Court.  Thus, even if this Court were to consider the Citi Defendants' Grable argument, this Court would conclude, pursuant to Bank of America, that the Citi Defendants have not established the existence of removal jurisdiction based upon the existence of a substantial federal question.

rates, if the applicable rate prescribed in this subsection exceeds the rate such State bank or insured branch of a foreign bank would be permitted to charge in the absence of this subsection, such State bank or such insured branch of a foreign bank may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank or such insured branch of a foreign bank is located or at the rate allowed by the laws of the State, territory, or district where the bank is located, whichever may be greater.

(b) Interest overcharge; forfeiture; interest payment recovery

If the rate prescribed in subsection (a) of this section exceeds the rate such State bank or such insured branch of a foreign bank would be permitted to charge in the absence of this section, and such State fixed rate is thereby preempted by the rate described in subsection (a) of this section, the taking, receiving, reserving, or charging a greater rate of interest than is allowed by subsection (a) of this section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon.  If such greater rate of interest has been paid, the person who paid it may recover in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of the interest paid from such State bank or such insured branch of a foreign bank taking, receiving, reserving, or charging such interest.

For the same reasons discussed, *supra* section II.A., this Court

CONCLUDES that the charges the Discover Defendants imposed for

57

their ancillary products constitute "interest" for purposes of DIDA and that at least some of the Attorney General's claims against the Discover Defendants allege that the rate of the interest charged by the Discover Defendants exceeds the allowable rate.  This Court therefore CONCLUDES that such claims against the Discover Defendants are complete preempted pursuant to DIDA. Further, the Court CONCLUDES that it is appropriate to exercise supplemental jurisdiction over the other claims against the Discover Defendants pursuant to 28 U.S.C. § 1367.  The Court therefore CONCLUDES that the Discover Defendants properly removed CV 12-00269, and the Court DENIES the Attorney General's motion to remand in CV 12-00269.

## III. **Request for Removal-Related Expenses**

Insofar as this Court has concluded that Defendants properly removed the instant cases, the Attorney General's request for removal related expenses is DENIED.

### CONCLUSION

On the basis of the foregoing, the Attorney General's Motions to Remand and for Costs and Fees, filed on June 15, 2012 in CV 12-00263, CV 12-00266, CV 12-00268, CV 12-00269, CV 12-00270, CV 12-00271, are HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 30, 2012.



    /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

STATE OF HAWAII, ex rel. DAVID M. LOUIE, ATTORNEY GENERAL V.
JPMORGAN CHASE & CO., ET AL.; CIVIL NO. 12-00263 LEK-KSC;  STATE
OF HAWAII, ex rel. DAVID M. LOUIE, ATTORNEY GENERAL V. HSBC BANK
NEVADA, N.A., ET AL; CIVIL NO. 12-00266 LEK-KSC; STATE OF HAWAII,
ex rel. DAVID M. LOUIE, ATTORNEY GENERAL V. CAPITAL ONE BANK
(USA) N.A., ET AL; CIVIL NO. 12-00268 LEK-KSC; STATE OF HAWAII,
ex rel. DAVID M. LOUIE, ATTORNEY GENERAL V. DISCOVER FINANCIAL
SERVICES, INC., ET AL; CIVIL NO. 12-00269 LEK-KSC; STATE OF
HAWAII, ex rel. DAVID M. LOUIE, ATTORNEY GENERAL V. BANK OF
AMERICA CORP., ET AL; CIVIL NO. 12-00270 LEK-KSC; STATE OF
HAWAII, ex rel. DAVID M. LOUIE, ATTORNEY GENERAL V. CITIGROUP
INC., ET AL; CIVIL NO. 12-00271 LEK-KSC; ORDER DENYING
PLAINTIFF'S MOTION TO REMAND AND FOR COSTS AND FEES